**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\*\*\*\*\*\*\*\*\*\*\***

PEOPLE OF THE VIRGIN ISLANDS, )
          ) **CASE NO. ST-2020-CR-00262**
    Plaintiff,   )
 vs.       ) 14 V.I.C. § 1052(a)
          ) 14 V.I.C. §§ 2253(a), 11(a) (2 Counts)
**LOUVINA PRINGLE,**   ) 14 V.I.C. §§ 297(a)(2), 11(a) (3 Counts)
          ) 14 V.I.C. §§ 2251(a)(2)(B), 11(a) (3 Counts)
          ) 14 V.I.C. §§ 295(3), 11(a)
     Defendant. ) 14 V.I.C. § 551(1)

Cite as: 2021 VI Super 94U

## MEMORANDUM OPINION AND ORDER

¶1  **THIS MATTER** is before the Court on:

1. Defendant's Motion To Dismiss Counts - Multiplicity ("Motion") and Defendant's Memorandum In Support Of Motion To Dismiss Counts ("Memorandum"), filed March 26, 2021;

2. The People's Opposition To Defendant's Motion To Dismiss ("Opposition"), filed April 12, 2021; and

3. Defendant's Reply To People's Opposition To Motion To Dismiss Counts ("Reply"), filed April 21, 2021.

¶2  The Court will consolidate Counts II and IV and dismiss Count X as these counts are multiplicitous.

## I. INTRODUCTION

¶3  On Tuesday, September 15, 2020, the Defendant Louvina Pringle ("Louvina")[1] was arrested and later charged by Information with eleven (11) criminal counts: (1) Kidnapping To Exact Money in violation of V.I. CODE ANN. tit. 14 § 1052(a); (2) Unauthorized Possession Of A Firearm During The Commission Of A Kidnapping To Exact Money in violation of 14 V.I.C. §§ 2253(a), 11(a); (3) Three (3) counts of Third Degree Assault in violation of 14 V.I.C. §§ 297(a)(2), 11(a); (4) Unauthorized Possession Of A Firearm During The Commission Of A Third Degree Assault in violation of 14 V.I.C. §§ 2253(a), 11(a); (5) Two (2) counts of Possession Of A

---

[1] As the Defendant's brother shares her last name, and he is the victim in this case, the Court will use the first names for Defendant and the victim.

Dangerous Weapon During A Third Degree Assault in violation of 14 V.I.C. §§ 2251(a)(2)(B), 11(a); (6) First Degree Assault in violation of 14 V.I.C. §§ 295(3), 11(a); (7) Possession Of A Dangerous Weapon During A First Degree Assault in violation of 14 V.I.C. §§ 2251(a)(2)(B), 11(a); (8) and Conspiracy in violation of 14 V.I.C. § 551(1).[2]

¶4      Louvina moves the Court to dismiss the weapons charges levied against her because "the Information is Multiplicitous; subjects her to Double Jeopardy, and will unfairly prejudice the Jury and result in a 'compromise verdict;' and, is a waste of judicial economy."[3]

## A. Background Information

¶5      Louvina's arrest stems from events which allegedly occurred on or around September 13 and 14, 2020.[4] The People allege that Louvina contacted her brother, Percival Pringle ("Percival"), on September 13 around 3:45 pm and she requested that Percival assist her boyfriend, Troy Harrigan ("Harrigan"), in moving two (2) generators.[5] Harrigan then directed Percival to a construction site, where two (2) masked men armed with a pistol with a silencer approached Percival and began threatening him verbally and physically, including sticking the handgun in his mouth, and demanding the payment of certain monies they believed were stolen.[6]

¶6      Percival was subsequently chained, beaten with both a pistol and hammer, cut with a knife, and otherwise tortured over the period of his kidnapping.[7] Throughout this time, Louvina was allegedly in constant contact with Harrigan by phone, and also spoke to Percival, demanding he reveal the location of the eight hundred thousand dollars ($800,000.00).[8]

¶7      After approximately one day of imprisonment and torture, Percival's kidnappers grew impatient and allegedly planned to kill him, dismember his body, and dispose of it; at which point, Percival tried to escape by jumping into a nearby blue Nissan car that was still running.[9] Percival then pressed on the gas while Harrigan attempted to wrestle control of the car from him.[10] A patrolling police cruiser came upon the two (2) men fighting in the blue Nissan and a police officer came to assist Percival, who was being beaten by Harrigan. Harrigan then fled.[11] Percival was taken to the hospital and Harrigan was subsequently taken into custody.[12] The blue Nissan was discovered to be a rental car, rented by Louvina.[13]

---

[2] Affidavit of Police Detective Brian Bedminster ¶ 27; Information 1-5.

[3] Pl.'s Mot. 1.

[4] Affidavit of Police Detective Brian Bedminster ¶¶ 3, 7.

[5] Affidavit of Police Detective Brian Bedminster ¶ 7.

[6] Affidavit of Police Detective Brian Bedminster ¶¶ 8-10.

[7] Affidavit of Police Detective Brian Bedminster ¶¶ 12-16.

[8] Affidavit of Police Detective Brian Bedminster ¶¶ 10, 11, 14.

[9] Affidavit of Police Detective Brian Bedminster ¶¶ 15-17.

[10] Affidavit of Police Detective Brian Bedminster ¶¶ 16-19.

[11] Affidavit of Police Detective Brian Bedminster ¶ 20-22.

[12] Affidavit of Police Detective Brian Bedminster ¶¶ 21-23.

[13] Affidavit of Police Detective Brian Bedminster ¶ 25; July 29, 2021 Suppression Hearing.

## B. Parties' Arguments

¶8     Louvina first contends that the weapon counts could result in multiple sentences for the same statutory offense and that this might lead to a violation of her Fifth Amendment Double Jeopardy protections.[14] Citing to *People v. Saldana*,[15] Louvina argues that "[t]he test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."[16] Louvina asserts that "the prosecutor will need to only prove the elements of § 2255(a)[[17]] once, subjecting Pringle to being punished on counts II and IV."[18]

¶9     Louvina then argues that a multiplicitous charging document "unavoidably prejudices a jury" as the "fact that a defendant has been arrested, charged, and brought to trial on several charges may suggest to the jury that [s]he must be guilty of at least one of those crimes."[19] Louvina, citing to *People v. Colon*,[20] additionally argues that "where the evidence is weak . . . the prosecutor's ability to bring multiple charges may substantially enhance the possibility that, even though innocent, the defendant may be found guilty on one or more charges as a result of a 'compromise' verdict."[21] Again citing to the reasoning in *Colon*, Louvina argues that a potential remedy may be consolidation of the weapons charges.[22]

¶10     Additionally, Louvina contends that § 2253(a) carries a mandatory minimum sentencing of fifteen (15) years, and Louvina would be facing thirty (30) years on the two (2) firearm charges alone.[23] Louvina argues that a post-trial intervention dismissing one of the charges would not remedy the potential jury prejudice outlined above.[24] Louvina maintains that the rule of lenity in statutory construction should be applied in the instant case.[25] Louvina again cites to *Colon* for the description of the rule: "where there is any question about whether a criminal statute imposes multiple punishments for the same criminal activity, the rule of lenity dictates that judicial tribunals construe the law as providing for a single penalty."[26] Louvina asserts that "whether §§ 2253 and 2251 impose multiple punishment for the same offenses is a question of law" and, therefore, "[t]he Rule of lenity dictates that the Court should adopt the construction more lenient to the defendant and dismiss the weapon counts" or otherwise consolidate them.[27]

---

[14] Def.'s Mem. 2-3.

[15] No. ST-14-CR-187, 2017 WL 3670199 (V.I. Super. Ct. Feb. 10, 2017).

[16] Def.'s Mem. 3; *Saldana*, 2017 WL 3670199, at *4 ("Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.").

[17] Def.'s Mem. 4. This appears to be a typo and the Court infers defendant means 14 V.I.C. § 2253(a) here.

[18] Def.'s Mem. 4.

[19] Def.'s Mem. 4 (quoting *People v. Colon*, 60 V.I. 149, 159-60 (V.I. Super. Ct. 2014)).

[20] 60 V.I. 149 (V.I. Super. Ct. 2014).

[21] Def.'s Mem. 4.

[22] Def.'s Mem. 6-8.

[23] Def.'s Mem. 8.

[24] Def.'s Mem. 9.

[25] Def.'s Mem. 9.

[26] Def.'s Mem. 9 (citing to *Colon*, 60 V.I. at 164).

[27] Def.'s Mem. 9.

¶11    Finally, Louvina states that the charges should be dismissed or consolidated for reasons of "judicial/jury economy."[28] Louvina maintains that "[t]he multiple counts will add to nearly every aspect of the trial to include, openings, examination time, jury instructions, and closings, with little effect post-trial if the Court applies the rule against double jeopardy at sentencing." Arguing that "[t]he prosecutor's office has apparently not changed its practice of overcharging . . . it is justifiable for this Court to take another tact and dismiss the offending Counts[.]"[29]

¶12    The People respond that "the charges are an accurate reflection of the criminal enterprise in which the Defendant participated and the Defense Motion to Dismiss should be denied."[30] The People note that 14 V.I.C. § 104,[31] which creates a single punishment limit for an act or omission which could be charged under multiple different statutory provisions, is not in conflict with § 2251, citing to *Ward v. People*.[32] Then citing to *Fontaine v. People*,[33] the People point out that the Supreme Court of the Virgin Islands has similarly declared that § 104 does not apply to § 2253, "stating the charge for the unauthorized use of a firearm and the underlying crime of violence are, 'not multiplicitous because the legislature clearly intended for additional sentencing where unauthorized firearms are involved.'"[34]

¶13    The People maintain that "the law is clear and directly on point that the Virgin Islands legislature intended for a defendant who uses a weapon . . . during the commission of a crime of violence, face two charges, one for the underlying crime of violence and another for the weapon" and that given the numerous assaults by different weapons on Percival, "[a]n information that reflected only one assault or only one weapon would not do justice to the violence" Percival endured.[35] While the People recognize "that this number of charges does tend to reflect poorly on the Defendant," they insist it is "not a product of the charging scheme" but an accurate reflection of the "outrageously dangerous and cruel behavior" of the defendants.[36] Lastly, the People state that charges against Louvina are a "reflection of the charges brought against her co-defendants" and that she "tied herself to these acts through her participation in the conspiracy" and since she set up her brother to be kidnapped and tortured, "she has earned these charges in full."[37]

¶14    Louvina replies that the People's reliance on *Ward* is misplaced as she is *not* arguing that a defendant may not be charged with the underlying crime and a weapons charge, but to the stacking of the weapons charges.[38] Further, Louvina points out that *Ward* considered whether one

---

[28] Def.'s Mem. 10.

[29] Def.'s Mem. 10.

[30] Pl.'s Opp'n 3.

[31] 14 V.I.C. § 104 ("An act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.").

[32] 58 V.I. 277, 286 (V.I. 2013) ("[T]he Legislature intended to establish an exception to the general rule set forth in §104 and allow individuals to be punished for both violating § 2251 and the underlying crime of violence.").

[33] 62 V.I. 643 (V.I. 2015).

[34] Pl.'s Opp'n 4 (quoting *Fontaine*, 62 V.I. at 654).

[35] Pl.'s Opp'n 4.

[36] Pl.'s Opp'n 5.

[37] Pl.'s Opp'n 5.

[38] Def.'s Reply 2.

could be punished, not charged, for violating § 2251 and the underlying charge.[39] Likewise, Louvina points out that the Virgin Islands Supreme Court in *Fontaine* was also dealing with sentencing, not the prejudice derived from multiplicitous charges.[40] Thus, Louvina contends neither case cited by the People is on-point as each deals with sentencing, not jury prejudice, and the "balance of the People's argument is equally off-point."[41]

¶15    Louvina argues that the Court should exercise its "gate-keeper" function with regard to the People's prosecutorial discretion.[42] Louvina, while recognizing it is not binding, also cites to a memorandum from the U.S. Attorney's Office stating that prosecutors should use reasoning and promote fairness in the criminal justice system rather than just charging as much as the law will allow.[43] Lastly, Louvina again argues that the multitude of serious charges will affect the jury and result in a 'compromise verdict'—that is "with that many charges, she must be guilty of something."[44]

## II.    LEGAL STANDARD

### A.  Motion To Dismiss; Multiplicitous Charges

¶16    Virgin Islands Rule of Criminal Procedure 12(b)(3)(B)(ii) allows a party to challenge a defect in the charging information before trial, namely that the information is "charging the same offense in more than one count (multiplicity)."[45] Title 14, § 104 of the Virgin Islands Code prevents multiple punishments for a single act or omission that can be charged under several different counts.[46]

¶17    This Court has previously stated that "[a] multiplicitous indictment charges the same offense in two or more counts and may lead to multiple sentences for a single violation, a result prohibited by the Double Jeopardy Clause."[47] Further, multiplicitous charges in a charging document or information "may leave a prejudicial impression on a jury at the commencement of trial that a defendant is alleged to have committed several crimes when, as a matter of law, he or she is only being accused of committing one crime."[48]

---

[39] Def.'s Reply 2.

[40] Def.'s Reply 3.

[41] Def.'s Reply 4.

[42] Def.'s Reply 5.

[43] Def.'s Reply 4-5.

[44] Def.'s Reply 5.

[45] V.I. R. Crim. P. 12(b)(3)(B)(ii) ("The following must be raised before trial . . . a motion alleging a defect in the information, such as . . . charging the same offense in more than one count (multiplicity)[.]").

[46] 14 V.I.C. § 104 ("An act or omission which is made punishable in different ways by different provisions of this Code may be punished under any of such provisions, but in no case may it be punished under more than one. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other.").

[47] *People v. Adams*, NO. ST-08-CR-424, NO. ST-08-CR-425, NO. ST-08-CR-426, NO. ST-08-CR-427, 2010 V.I. LEXIS 192, at *1 (V.I. Super. Ct. Nov. 12, 2010) (citing *United States v. Pollen*, 978 F.2d 78, 83 (3d Cir. 1992)).

[48] *Colon*, 60 V.I. at 159.

¶18    In *Colon*, this Court decided whether multiple dangerous weapon charges against each defendant were multiplicitous.[49] In that case, the defendant was charged with First Degree Murder (based on premeditation), First Degree Murder (based on felony murder), and Second Degree Murder.[50] In addition, each murder charge carried with it an additional charge of Using A Dangerous Weapon in the commission of each murder charge.[51] In analyzing § 2251(a)(2)(B), the Court found that the multiple counts against the defendant required proof of exactly the same elements and were not at all dependent upon which crime of violence was alleged.[52]

¶19    The Court first considered that the 'crime of violence' aspect of the statute was not an element, but a sentence enhancer.[53] The Court stated that "[u]nder the *Nanton* and *Powell* analyses of section 2251(a)(2)(B), the multiple counts asserted against each Defendant in these cases require proof of exactly the same elements and are not at all dependent upon which crime of violence is asserted."[54] The Court additionally reasoned that even if the 'crime of violence' was viewed as an element of the crime, the use of the word "a" in the statute before the phrase meant it applied to "any crime of violence" charged: "By use of the indefinite article 'a' in section 2251(a)(2)(B), the Legislature of the Virgin Islands did not intend for there to be 'separate units of prosecution' for each of the pertinent crimes of violence alleged in a single case."[55] The *Colon* Court considered consolidation to be the appropriate remedy.[56]

¶20    In *Connor v. People*, the Virgin Islands Supreme Court considered whether a charge of robbery in the first degree and possession of a firearm during the commission of robbery in the first degree were multiplicitous.[57] Citing to the Third Circuit Court of Appeals decision in *Gov't of the V.I. v. Soto*,[58] the Virgin Islands Supreme Court adopted the reasoning that "because the Legislature was punishing the corresponding crime of possession of a deadly weapon during the commission of the crime of violence, along with the primary offense of committing the crime of violence itself, its intention to punish two offenses from the same act was clear."[59] Therefore, the charges were not multiplicitous and punishment for both of them did not violate the Double Jeopardy Clause or § 104.[60]

¶21    However, in *Tyson v. People*,[61] the Virgin Islands Supreme Court considered a case where a defendant was twice found in violation of § 2253, Unauthorized Possession Of A Firearm, for

---

[49] *Id.* at 153-54.

[50] *Id.* at 155.

[51] *Id.*

[52] *Id.* at 161.

[53] *Id.* ("The issue of whether the dangerous weapon was used in a crime of violence under subsection (B) is not an element of the crime, but, rather, a sentence enhancer which also must be found by a jury beyond a reasonable doubt.").

[54] *Id.*

[55] *Id.* at 163 (citing *United States v. Platter*, 514 F.3d 782, 785 (8th Cir. 2008)).

[56] *Id.* at 165 ("After due consideration of these options and the circumstances of this case, the Court concludes the appropriate remedy is to consolidate the five section 2251(a)(2)(B) charges against each Defendant into a single count against each Defendant.").

[57] 59 V.I. 286, 292 (V.I. 2013).

[58] 718 F.2d 72, 78, 19 V.I. 642 (3d Cir. 1983).

[59] 59 V.I. at 293 (citing *Soto*, 718 F.2d at 78-79).

[60] *Id.* at 294.

[61] 59 V.I. 391 (V.I. 2013).

two (2) different murders with the same gun.[62] The Virgin Islands Supreme Court considered the charges multiplicitous, as even though two (2) different murders were committed, it was with the same gun and the crime occurred around the same time.[63] Therefore, the charges did not constitute two (2) different offenses as the purpose of § 2253 was to punish possession of a firearm while committing a crime or crimes, not to punish the underlying crimes themselves.[64] Therefore, it is not multiplicitous to charge someone for possession of a firearm during a crime and charge him for the underlying crime, but it is multiplicitous to charge someone for possession of the same weapon multiple times for multiple underlying crimes when the same weapon is used and the crimes are a part of the same ongoing criminal activity.

## III.   ANALYSIS

### A. Consolidation of Counts II and IV is appropriate here

¶22    It is neither Louvina's contention that the charges of kidnapping and possession of a firearm during the crime of kidnapping are multiplicitous, nor that third degree assault and possession of a firearm during a crime of kidnapping are multiplicitous but, rather, that possession of a firearm during the crime of kidnapping and possession of a firearm during a crime of third degree assault are multiplicitous.

¶23    Using the *Colon* Court's reasoning regarding § 2251 as a guide, the underlying language of "a crime of violence" in § 2253 does appear to be a sentence enhancer here. The language is included in the main text, not in a separate section separated by an "or," and the statute uses "except" to separate the penalty for mere possession of an unauthorized handgun from the penalty for possession and use during commission of a crime. Further, such penalties are said to be "in addition to" the underlying crime.[65]

¶24    The question is whether possession of the same gun during the commission of several different crimes occurring under the same general criminal conspiracy constitutes the same offense and, therefore, whether the People are prosecuting a single violation under separate charges. A plain reading of the statute indicates that the People could prove § 2253 was violated by either showing that there was a gun and a third degree assault, or that there was a gun and a kidnapping. Like in *Tyson*, where one gun was used in the commission of two (2) related murders, one gun was also used here in the commission of two (2) related crimes, a kidnapping where the person was also assaulted. The crime being punished by § 2253 is possession of an unlawful gun, not kidnapping or third degree assault. Charging both Counts II and IV could lead to multiple sentences

---

[62] *Id.*

[63] The crime occurred during a shootout. *Tyson*, 59 V.I. at 396-97, 428-29.

[64] *Id.* at 428 ("The record contains no evidence that Tyson used multiple firearms, and instead indicates that he possessed the same firearm throughout the duration of the shooting incident. Although there were arguably two victims of Tyson's crime of possession, considering possession itself is the crime prohibited by section 2253(a) — independent of any crime of violence — we do not find that each count of possession was committed against at least one different victim, so as to warrant separate sentences.").

[65] 14 V.I.C. § 2253(a).

for the same violation. To avoid Double Jeopardy concerns, if Louvina were found guilty of both, the Court would need to vacate one charge.

¶25    The question then becomes whether it is proper to leave the charges in place and exercise the appropriate remedy should the need arise at sentencing, or whether the Court should proactively dismiss or consolidate the charges. This decision should be made on a case-by-case basis, considering such factors as judicial economy, risk of prejudice, the totality of the charges against the defendant, and the severity of those charges. Louvina asserts dismissal is appropriate to send a message to the prosecutor's office that overcharging is not to be tolerated. The Court is not so persuaded this is the correct remedy—rather, following the reasoning in *Colon*, consolidation of the charges is more appropriate here.

¶26    Consolidation mitigates the risk of jury prejudice and effectively conserves judicial resources by streamlining the issues that will be presented at trial and sentencing, while accurately reflecting the grave nature of the alleged crimes. Louvina will still have to answer for the alleged use of an unlawful firearm during a crime of violence, as well as the bulk of the many charges against her. The People may prove either, or both, the crimes of assault and kidnapping to satisfy the crime of violence enhancement, and the jury need not be confused by repetitive jury instructions. Therefore, the Court will consolidate Counts II and IV into one Count of Possession of a Firearm during a Crime of Violence in violation of 14 V.I.C. § 2253(a).

## B. Dismissal of Count X is appropriate here but not Counts VI or VIII

¶27    Louvina next argues that Counts VI, VIII, and X, Carrying or Using A Dangerous Weapon in violation of 14 V.I.C. § 2251, are multiplicitous. Count VI charges Louvina with Possession Of A Dangerous Weapon During A Third Degree Assault (Hammer). Count VIII charges Louvina with Possession Of A Dangerous Weapon During A Third Degree Assault (Knife). Count X charges Louvina with Possession Of A Dangerous Weapon During A First Degree Assault (Handgun, Knife, Hammer).

¶28    Section 2251 imposes criminal liability on anyone who uses, has, or possesses, a series of dangerous weapons outlined in the statute. The weapons outlined include a list of blunt objects like "blackjack" and "bludgeon" as well as a list of bladed or sharp objects such as a "dangerous knife" and "razor."[66] The list notably does not include guns. In their Information, the People specify that the victim was beaten with the "gun butt" and charge Louvina in Counts III and IV with using the firearm in such a manner.[67]

¶29    That the Virgin Islands Legislature has established separate sentencing schemes for dangerous weapons that are firearms and dangerous weapons that are blunt or blade-based is apparent. Further, whereas § 2253 imposes liability where any firearm is used, § 2251 separately lists what dangerous weapons shall be considered. It appears, therefore, that the legislature intended criminal liability to attach to each instance of a different weapon. Thus, the charges are

---

[66] 14 V.I.C. § 2251(a).

[67] Pl.'s Information 2.

not multiplicitous as the type of weapon is a separate element of the offense. The prosecutor must show that a *knife* was used during a crime of violence and a *hammer* (or 'bludgeon') was used during a crime of violence. Consequently, consolidation of Counts VI and VIII would not be appropriate, as they represent different crimes – possession of different dangerous weapons.

¶30    However, Count X appears to be a catchall charge, accusing Louvina of participating "in injuring the skin and tissue about Percival Pringle's head and body by torturing him with a handgun, a knife and a hammer."[68] As the handgun assaults are covered by other charges—and firearm possession is considered separately[69] from § 2251—charging Louvina under § 2251 is clearly multiplicitous. She would be punished for the same act under two (2) different statutes in violation of § 104 and the Double Jeopardy clause. Similarly, Count X also includes the accusations of possession of a knife and hammer during a crime of violence, already reflected by Counts VI and VIII. The only difference is that the assault in Count X is in the first degree, and not in third degree as charged. Assault charge. As analyzed above and by the *Colon* Court, § 2251 criminalizes possession of dangerous weapons, and punishes said possession more harshly when they are used in a crime of violence. That the underlying crime of violence may include both a First Degree Assault and a Third Degree Assault does not establish multiple counts for prosecution.

¶31    As Count X is multiplicitous and redundant, it will accordingly be dismissed. Dismissal is appropriate as the actions alleged in Count X are already represented by the other Counts charged by the People and its inclusion in trial, jury instructions, and sentencing would be potentially confusing to jurors, needlessly prejudicial, a waste of judicial time and resources, and does not lessen the severity or seriousness of the other Counts against Louvina as the alleged crimes are therein represented.

## IV.    CONCLUSION

¶32    On or around September 13, 2020, to September 14, 2020, Percival was kidnapped and tortured by Harrigan and others with the intent of eliciting from him the location of approximately eight hundred thousand dollars ($800,000.00) in cash, which Harrigan claimed had been stolen. During this kidnapping, Harrigan was reportedly in contact with Percival's sister and Harrigan's girlfriend, Louvina, who had instructed Percival to meet Harrigan earlier in the day to move two (2) generators. On September 15, 2020, Louvina arrived at the police station after being notified by her rental car agency that her rental car had been damaged in an accident. After an interview, she was subsequently arrested.

¶33    Among other charges, Louvina was charged with Unauthorized Possession Of A Firearm During The Commission Of A Kidnapping To Exact Money in violation of 14 V.I.C. §§ 2253(a),

---

[68] Pl.'s Information 4.

[69] While a firearm can be considered "any other dangerous or deadly weapon," the presence of a list of like-objects (types of bludgeons or blunt objects followed by types of knives or bladed objects) and the separate statutory charges for firearms appearing nearby cautions against application of § 2251 to firearms. Further, the People appear to be arguing that because Percival was bludgeoned with the butt of the gun, the firearm also counts as a "bludgeon" under § 2251. This would ignore the clearly delineated scheme setup by the Legislature where possession and use of a firearm—regardless of how it is used during a crime—is treated separate and distinctly from other weapons.

11(a); Unauthorized Possession Of A Firearm During The Commission Of A Third Degree Assault in violation of 14 V.I.C. §§ 2253(a), 11(a); Possession Of A Dangerous Weapon During A Third Degree Assault (Hammer) in violation of 14 V.I.C. §§ 2251(a), 11(a); Possession Of A Dangerous Weapon During A Third Degree Assault (Knife) in violation of 14 V.I.C. §§ 2251(a), 11(a); and Possession Of A Dangerous Weapon During A First Degree Assault (Handgun, Knife, Hammer) in violation of 14 V.I.C. §§ 2251(a), 11(a). Louvina has moved to dismiss these charges on the grounds that they are multiplicitous, prejudicial, and in the interest of judicial economy.

¶34 Because § 2253 criminalizes possession of a firearm during a crime and does not differentiate between the crimes, the two (2) charges are multiplicitous and Counts II and IV will be consolidated. Because § 2253 criminalizes possession of different dangerous weapons, the charges that both a knife and hammer were used are not multiplicitous. However, the charge that a gun, knife, and hammer were used is redundant and multiplicitous of the other charges and will be dismissed.

¶35 Accordingly, it is hereby

**ORDERED** that Defendant's Motion To Dismiss Counts - Multiplicity, filed March 26, 2021 is **GRANTED in part**; and it is further

**ORDERED** that Counts II and IV are **CONSOLIDATED**; and it is further

**ORDERED** that, **on or before October 7, 2021**, the People **SHALL** file a First Amended Information consolidating Counts II and IV; and it is further

**ORDERED** that Count X against Defendant Louvina Pringle is **DISMISSED**; and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to counsel of record.

DATED: 9|22|2021

_____
**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LATOYA CAMACHO**
Court Clerk Supervisor 09 / 22 /2021